UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HOLLY WILLIAMS,

        Plaintiff,

   v.

UNITED STATES OF AMERICA,

        Defendant.

CASE NO. C07-5529BHS

ORDER TO SHOW CAUSE

This matter comes before the Court on Defendant's Cross Motion for Summary Judgment and To Dismiss Under Rule 12(b)(1). Dkt. 21. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby orders the parties to show cause why this matter should not be certified to the Washington State Supreme Court.

**I. PROCEDURAL BACKGROUND**

On August 27, 2007, Plaintiff Holly Williams, individually and as personal representative of the estate of Angel DeShaney, filed a complaint against Defendants United States of America and John and/or Jane Does 1-10. Dkt. 1. Ms. Williams claims individual damages for the loss of a child, Angel DeShaney. *Id*. ¶ 5.1. Ms. Williams, as personal representative of the estate of Angel DeShaney, claims damages for wrongful death. *Id*. ¶ 5.2.

ORDER - 1

On October 30, 3008, Plaintiff filed a Motion for Summary Judgment Re: Plaintiff's Right to Bring a Wrongful Death Claim. Dkt. 20. On November 24, 2008, Defendant United States responded and included a Cross Motion for Summary Judgment and To Dismiss Under Rule 12(b)(1). Dkt. 21. On November 26, 2008, Plaintiff replied to her motion and included a motion to strike Defendant's exhibits. Dkt. 24. On December 15, 2008, Plaintiff responded to Defendant's motions. Dkt. 30. On December 22, 2008, Defendant replied to its motions. Dkt. 35.

## II. FACTUAL BACKGROUND

On June 27, 2004, Plaintiff Holly Williams arrived at the Madigan Army Medical Center ("Madigan"). Dkt. 22, Declaration of Kristin B. Johnson, Exh. A ("Williams' Medical Records"). After completing a pregnancy evaluation, the Madigan provider referred Ms. Williams to either a primary care physician or an obstetrics clinic for a pregnancy test the following morning. *Id*. at 2. On June 30, 2004, Ms. Williams presented to the Madigan obstetrics clinic and the medical provider placed Ms. Williams' pregnancy at five weeks gestation. *Id*. at 5.

On July 14, 2004, Ms. Williams returned to the obstetrics clinic complaining of acid reflux and nausea. *Id*. at 6. On July 21, 2004, Ms. Williams returned to the clinic complaining of vaginal cramping and light bleeding. *Id*. at 10. Ms. Williams returned to the clinic at least three more times with similar symptoms. *Id*. at 30, 39, 48.

On September 28, 2004, Ms. Williams was diagnosed with pre-term premature rupture of membranes. *Id*. at 44. On September 29, 2004, Ms. Williams returned to the clinic and the diagnosis of ruptured prenatal membranes and choriomanionitis was confirmed. *Id*. at 57. An Ethics Board, consisting of three doctors, met to discuss the need for delivery of the fetus due to the choriomanionitis infection. *Id*. Ms. Williams was advised that the only treatment for her condition was removal of the pregnancy and chose Cytotec as the method of inducing labor. *Id*. Doctor Robert J. Cornfeld stated that

a "non-viable pre-term infant" was delivered that evening. *Id*. at 58. The medical record reads, in part, as follows:

> Fetus spontaneously delivered onto bed. Fetal heart rate/spontaneous movement/breathing attempts were noted. Cord was doubly clamped and cut and infant was transferred to mother's abdomen. . . . Fetus with persistent heart rate and remained with parents. . . . Visual inspection reveals a grossly normal appearing fetus.

*Id*. at 72. Another medical record reads, in part, as follows:

> 19 yo . . . at 18+3 weeks with preterm premature ruture [sic] of membranes . . . pt admission for induction of labor . . . . Delivery via vaginal delivery. Fetus had + cardiac activity with some limb movements. Delivery 2115 with time of death 2250.

*Id*. at 66.

## III. DISCUSSION

Defendant argues that the Court lacks jurisdiction over this action. Dkt. 21. A district court "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The question, therefore, is whether Defendant is liable to Plaintiff under Washington's wrongful death statute for the death of Angel DeShaney.

RCW 4.24.010 provides, in relevant part, as follows:

> A mother or father, or both, who has regularly contributed to the support of his or her minor child, and the mother or father, or both, of a child on whom either, or both, are dependent for support may maintain or join as a party an action as plaintiff for the injury or death of the child.
> ***
> In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent-child relationship in such amount as, under all the circumstances of the case, may be just.

RCW 4.24.010. Chapter 4.24 RCW does not define "minor child."

The Washington Supreme Court ruled in *Moen v. Hanson*, that RCW 4.24.010 permits recovery for the death of a viable unborn fetus. *Moen*, 85 Wn.2d 597, 601 (1975). In *Moen*, the mother and unborn fetus died as a result of an automobile collision.

ORDER - 3

*Id.* at 597.  At the time of death, the mother was approximately eight months pregnant and "[v]iability of the fetus [was] implicitly acknowledged by the parties." *Id.* at 597, n.1. The *Moen* defendants argued that "viability is an inappropriate point of demarcation for determining the beginning of legal personality." *Id.* at 601.  The court stated that it was "satisfied that the alternative . . ., recovery only if live birth occurs, is productive of unreasonable results." *Id.*  The court explicitly "reject[ed] birth as the demarcation." *Id.*

The Washington Court of Appeals ruled in *Baum v. Burrington*, that RCW 4.24.010 does not permit recovery for the death of a nonviable fetus. *Baum v. Burrington*, 119 Wn. App. 36 (2003), *review denied*, 151 Wn.2d 1035 (2004).  The *Baum* court stated that "Black's Law Dictionary defines a viable child as one who is 'capable of independent existence outside of his or her mother's womb, . . . even if only in an incubator.'" 119 Wn. App. at 39 n. 3 (citing Black's Law Dictionary (Abridged 6th ed., 1991)).  The *Baum* court affirmed the trial court's summary judgment dismissal "on the grounds that Washington does not recognize a cause of action for the wrongful death of a nonviable fetus *that is not born alive*." *Id.* at 39 (emphasis added).

Washington courts have not addressed the question that the parties have presented to this Court, which the Court preliminarily states as follows:

> Whether a neonate, with a gestational age of 18 to 21 weeks; delivered with a persistent heart rate, spontaneous movement, and breathing attempts; and was pronounced dead one hour and thirty five minutes after delivery, is considered a "child" or a "minor child" for purposes of Washington's wrongful death statute, RCW 4.24.010.

Defendant claims that Angel DeShaney was a "non-viable fetus that [was] born alive." Dkt. 21 at 9.  Plaintiff argues that a "fetus is not 'born alive'" and contends that an infant born alive is a child or minor child for purposes of RCW 4.24.010.  Dkt. 30 at 3.  Several states have addressed similar factual scenarios and are split on whether their wrongful death statutes confer liability. *See Miller v. Kirk*, 120 N.M. 654, 905 P.2d 194 (New. Mex. Sup. Ct. 1995) (declining to allow a wrongful death claim for a nonviable fetus where the fetus is born alive but dies soon after birth); *Ferguson v. District of*

*Columbia*, 629 A.2d 15 (D.C. App. 1993) (same); *Brown v. Green*, 781 F. Supp. 36 (D.D.C. 1991) (same); *Lollar v. Tankersley*, 613 So.2d 1249 (Ala. Sup. Ct. 1993) (cause of action for death resulting from a pre-natal injury requires that the fetus attain viability either before the injury or before the death); *but compare Nealis v. Baird*, 996 P.2d 438 (Ok. Sup. Ct. 1999) (wrongful death statute encompassed parents' claim for the loss of a non-viable fetus who was born alive); *Hudak v. Georgy*, 535 Pa. 152 (Penn. Sup. Ct. 1993); *Group Health Assoc., Inc. v. Blumentahal*, 295 Md. 104 (Md. Ct. App. 1983) (same); *Torigian v. Watertown News Co.*, Inc., 352 Mass. 446 (Mass. Sup. Ct. 1967) (same).

RCW 2.60.020 reads as follows:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved . . . .

RCW 2.60.020. In this case, the Court's threshold question of whether it may exert jurisdiction depends upon an unresolved question of local law. Therefore, the Court finds that it is necessary to ascertain Washington's law on this matter before proceeding. For these reasons, the Court, having reviewed the memoranda and the record, orders the parties to show cause why the Court should not certify to the Washington State Supreme Court the question whether Plaintiff has a cause of action under Washington's wrongful death statute, RCW 4.24.010.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the parties are to **SHOW CAUSE** why this matter should not be certified to the Washington State Supreme Court. Either party may file a response no longer than five pages no later than February 4, 2009. The Court proposes to certify the question as follows:

> Whether a neonate, with a gestational age of 18 to 21 weeks; delivered with a persistent heart rate, spontaneous movement, and breathing

ORDER - 5

attempts; and was pronounced dead one hour and thirty five minutes after delivery, is considered a "child" or a "minor child" for purposes of Washington's wrongful death statute, RCW 4.24.010.

The parties may suggest modifications to this question in any response to this order to show cause.

DATED this 23rd day of January, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge